IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:14-CR-58-FL

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | ORDER |
| AVIN MARSALIS BROWN and AKBA JIHAD JORDAN, | ) | |
| Defendants. | ) | |

The government has apprised the court and defendants of the applicability of the Classified Information Procedures Act ("CIPA"), 18 U.S.C. App. III §§ 1-16, to certain classified materials at issue in the case, in response to recent court order, and requested a CIPA § 2 conference (DE 41). For reasons given, this motion will be allowed.

**BACKGROUND**

A.  The Charges

Defendants are charged in indictment returned April 1, 2014, with conspiracy to provide material support to terrorists in violation of 18 U.S.C. § 2339A and conspiracy to murder, kidnap, maim and injure persons in a foreign country in violation of 18 U.S.C. § 956(a). The government asserts that defendants conspired to travel overseas to fight the "kuffar" (non-Muslims) in Syria and Yemen.

1

B.   Case Progress

The government reports that it made its initial discovery production April 10, 2014, including approximately 70 pages of declassified material. A protective order has been put in place already for sensitive discovery. The government describes an ongoing declassification process involving "a substantial quantity of additional material that is currently classified, [that] it expects...to be declassified and produced by April 21, 2014." Gvt.'s Mot. for CIPA Conference at 7. Moreover, beyond this material, the government refers to additional classified material that is being reviewed, which may be subject to disclosure. It notes that this would raise issues of national security for the court's address under CIPA.

Accordingly, the government requests pretrial conference pursuant to CIPA § 2,[1] to be scheduled in around 45 days. The motion recognizes the current case schedule for the case does not reflect its reality. At anticipated conference, the government proffers it will provide an estimate of the time necessary for it to conduct a complete review of any potentially relevant classified information, and based upon that, a proposed schedule for production of discovery and for proceedings under CIPA §§ 3 and 4 will be offered. Moreover, "[b]ecause of the classified nature of certain information, the government will be unable to provide the Court with specifics in open court (e.g., the type of information at issue, the amount of information at issue, the period of time

---

[1] CIPA § 2 provides as follows: "At any time after the filing of the indictment or information, any party may move for a pretrial conference to consider matters relating to classified information that may arise in connection with the prosecution. Following such motion, or on its own motion, the court shall promptly hold a pretrial conference to establish the timing of requests for discovery, the provision of notice required by section 5 of this Act, and the initiation of the procedure established by section 6 of this Act. In addition, at the pretrial conference the court may consider any matters which relate to classified information or which may promote a fair and expeditious trial. No admission made by the defendant or by any attorney for the defendant at such a conference may be used against the defendant unless the admission is in writing and is signed by the defendant and by the attorney for the defendant."

when such information was collected, whether agencies other than the FBI were involved, etc.)." Gvt.'s Mot. for CIPA Conference at 8. Following the CIPA § 2 conference, however, the government offers that it will be prepared to enter into *ex parte* conference to discuss these classified matters.

**COURT'S DISCUSSION**

A.   CIPA Processes Generally

CIPA provides a procedural framework for "protecting classified information without running afoul of a defendant's right to a fair trial." United States v. Moussaoui, 591 F.3d 263, 281 (4th Cir. 2010). Classified information, as the term is used in the act, "means any information or material that has been determined by the United States Government pursuant to an Executive order, statute, or regulation, to require protection against unauthorized disclosure for reasons of national security." CIPA § 1(a).[2] CIPA is a flexible act, and it vests the court with "wide latitude to deal with thorny problems of national security in the context of criminal proceedings." United States v. Abu Ali, 528 F.3d 210, 247 (4th Cir. 2008).

Section 4 of CIPA governs the discovery of classified information by a defendant.[3] It provides that:

> [t]he court, upon a sufficient showing, may authorize the United States to delete specified items of classified information from documents to be made available to the

---

[2] The government's right to protect classified information "is absolute," and the court has no authority to second guess the government's classification determinations. Moussaoui, 591 F.3d at 218 n.15; see also United States v. Abu Ali, 528 F.3d 210, 253 (4th Cir. 2008) ("'[W]e have no authority[ ] to consider judgments made by the Attorney General concerning the extent to which the information . . . implicates national security.'") (quoting United States v. Fernandez, 913 F.2d 148, 154 (4th Cir. 1990)).

[3] The court may permit only individuals possessing the requisite security clearance to view classified information. See Abu Ali, 528 F.3d at 254. Because defendants lack such clearances, only cleared defense counsel would be permitted to view any classified information turned over in discovery.

3

> defendant through discovery under the Federal Rules of Criminal Procedure, to substitute a summary of the information for such classified documents, or to substitute a statement admitting relevant facts that the classified information would tend to prove. The court may permit the United States to make a request for such authorization in the form of a written statement to be inspected by the court alone.

CIPA § 4. This provision creates no new rights of or limits on discovery. Rather, it "clarifies district courts' power under Federal Rule of Criminal Procedure 16(d)(1) to issue protective orders denying or restricting discovery for good cause," which includes "the protection of information vital to the national security." United States v. Aref, 533 F.3d 72, 78 (2d Cir. 2008); see also In re Terrorist Bombings of U.S. Embassies in E. Afr., 552 F.3d 93, 121 (2d Cir.2008) (CIPA § 4's "provisions on discovery . . . complement those of Rule 16(d)" by "giv[ing] trial judges adequate guidance to protect against the unauthorized disclosure of classified information in the custody of the federal courts." (internal quotations omitted)).

Section 4 permits a court "to authorize the government to redact information from classified documents before providing such documents to the defendant during pretrial discovery." United States v. Moussaoui, 333 F.3d 509, 514 n.6 (4th Cir. 2003); see also United States v. Smith, 780 F.2d 1102, 1105 n. 7 (4th Cir.1985) (en banc) (noting that CIPA § 4 "provides a procedure by which the court can delete portions of classified documents to be discovered by a defendant. Substitutions are also permitted under certain circumstances.").

Where the government seeks, in the interest of national security, to restrict a criminal defendant's discovery of classified information which, as suggested, may be necessary in this case, the court must "determine whether the criminal defendant's interest in the information at issue outweighs the government's interest in withholding it." In re Terrorist Bombings, 552 F.3d at 124. To determine whether the government's interest must give way in a CIPA case, the Fourth Circuit

4

has adopted the standard set forth in Roviaro v. United States, 353 U.S. 53 (1957), where the Supreme Court held that the government's privilege to withhold the identity of a confidential informant "must give way" when the information "is *relevant* and *helpful* to the defense of an accused, or is essential to a fair determination of a cause." Id. at 60-61 (emphasis added). Smith, 780 F.2d at 1107-10 (applying the Roviaro balancing test to the court's decision under CIPA § 6); see also United States v. Abu Ali, 528 F.3d 210, 247 (4th Cir. 2008) ("[T]he governmental privilege, and indeed responsibility, is nonetheless 'a qualified one' in the sense that it must give way when the information 'is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause.'"(quoting Smith, 780 F.2d at 1107)); United States v. Fernandez, 913 F.2d 148,154 (4th Cir. 1990) ("Although Smith requires a court to take into account the government's interest in protecting national security, it also stresses that this interest cannot override the defendant's right to a fair trial."); United States v. Moussaoui, 382 F.3d 453, 466 n. 18 (4th Cir. 2004) ("There is no question that the Government cannot invoke national security concerns as a means of depriving [the defendant] of a fair trial.").

Although the Smith court adopted the "relevant and helpful" standard in the context of CIPA § 6 determinations regarding the use, relevance, and admissibility of classified materials at trial, other courts, including this one, have applied a similar standard under CIPA § 4 when deciding whether classified materials must be made available to defendants in pretrial discovery. See United States v. Yunis, 867 F.2d 617, 623-625 (D.C. Cir. 1989); Aref, 533 F.3d at 79-80; see also United States v. Rosen, No. 1:05-CR-225, 2005 WL 5925549 (E.D.Va. Nov. 5, 2005) (adopting Yunis standard in pretrial discovery context). In Yunis, the D.C. Circuit ultimately found that the district court had abused its discretion in ordering the disclosure of classified information to a defendant

5

"where the statements in question were no more than theoretically relevant and were not helpful to the presentation of the defense or essential to the fair resolution of the cause." Yunis, 867 F.2d at 625.

In reaching this conclusion, the Yunis court articulated a multi-step analysis: First, the district court must determine whether the information at issue passes the low hurdle of relevance, that is, whether it has "'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'" Yunis, 867 F.2d at 622, 623 (quoting Fed. R. Evid. 401). Next, the district court must determine whether the government's assertion of privilege is "at least a colorable one."[4] Id. at 623. Third, and most significantly, the court must determine whether the classified information is at least "'helpful to the defense of the accused.'" Id. (quoting Roviaro, 353 U.S. at 60-61). While information subject to disclosure under Brady v. Maryland and its progeny "is plainly subsumed within the larger category of information that is 'at least helpful' to the defendant, information can be helpful without being 'favorable' in the Brady sense." United States v. Mejia, 448 F.3d 436, 456-57 (D.C. Cir. 2006).

If the classified material is relevant and helpful to the defendant, it may not be deleted from discovery.[5] The government may seek, however, to substitute a summary for such classified

---

[4] The Yunis court recognized that the government's security interest in certain taped conversations may be not so much in their contents, but in the "time, place, and nature of the government's ability to intercept the conversations at all." Yunis, 867 F.2d at 623.

[5] The D.C. Circuit declined to address the question of whether classified information deemed relevant and helpful could nonetheless be withheld from discovery to be made available to the defendant if the government's need to keep the information secret outweighed the defendant's interest in disclosure. Yunis, 867 F.2d at 625; see also Mejia, 448 F.3d at 457 n.18. In light of the Fourth Circuit's pronouncements that "a defendant becomes entitled to disclosure of classified information upon a showing that the information 'is relevant and helpful to the defense . . . or is essential to a fair determination of a cause,'" Moussaoui, 382 F.3d at 472 (quoting Smith, 780 F.2d at 1107), and that helpful or essential material "must be admitted unless the government provides an adequate substitution," id. at 476, it appears to this court

6

materials, or to substitute a statement admitting relevant facts that the classified information would tend to prove. CIPA § 4.

Defendants and their counsel are in the best position to know whether information would be helpful to their defense, and courts have recognized that defendants are thus disadvantaged by not being permitted to see the information sought to be withheld from discovery and assist the court in assessing its helpfulness. See Mejia, 448 F.3d at 458; Yunis, 867 F.2d at 624. Accordingly, the D.C. Circuit has applied the "at least helpful" test in a way that gives defendants the benefit of the doubt. Mejia, 448 F.3d at 458.

So, too, is a defendant best situated to determine whether a proposed substitution provides him with substantially the same ability to promote his defense as the original, classified material. Because a court is not fully aware of the factual nuances of the case, it can not on its own surmise, for example, whether the date of a particular communication would be helpful to the defense, or whether the number of times a certain topic was raised in conversation, or the specific wording used to express an idea, might support a defendant's theory of the case.

Where defense attorneys in a case have been granted the security clearances necessary to view the classified materials at issue, and a court has issued a detailed protective order prohibiting unlawful disclosures,[6] while neither of these factors *per se* entitles defense counsel to view classified materials, they may weigh in favor of more complete disclosure of information. See In re Terrorist

---

the answer to the question left unaddressed in Yunis is no. See generally United States v. Jackson, et al., (2:10-CR-8-FL); United States v. Boyd et al., (5:09-CR-216-FL).

[6] Eligibility for a security clearance is "limited to United States citizens for whom an appropriate investigation of their personal and professional history affirmatively indicated loyalty to the United States, strength of character, trustworthiness, honesty, reliability, discretion, and sound judgment, as well as freedom from conflicting allegiances and potential for coercion, and willingness and ability to abide by regulations governing the use, handling, and protection of classified information." 28 C.F.R. § 17.41(b). Disclosure to defendants themselves would be prohibited.

7

Bombings, 552 F.3d at 120-122 (2d Cir. 2008) (holding that CIPA authorizes district courts to limit access to classified information to persons with the proper security clearance); United States v. Libby, 429 F.Supp.2d 18, 23-24 (D.D.C. 2006) (considering the security clearances of defense counsel in striking balance under CIPA § 4), reconsidered in part by United States v. Libby, 429 F.Supp.2d 46 (D.D.C. 2006).

In any case, the court must be diligent in its adherence to the CIPA processes to ensure that the benefits of the traditional adversary process are not entirely forgone and that a thorough vetting, including of the government's CIPA § 4 motions, is conducted. This can be aided by requiring particular showing by the government as to necessity of proceeding *ex parte*, and the court providing as much notice as possible of the court's decision making.

Even though CIPA allows § 4 proceedings to be held *ex parte*, and courts have upheld the *ex parte* nature of these proceedings, the court's decision-making regarding the "relevant and helpful" nature of certain classified materials may be enhanced if cleared defense counsel are involved in some adversary proceeding with the government.

It is clear that the contours of this flexible statute must be folded carefully to make a fit in each case. Though the specific text of CIPA § 2, describing pretrial conference procedures and ensuing case events, omits direct mention of CIPA § 4, at this stage of the case at hand issues loom concerning discovery of classified information. The court turns its attention more particularly below to the pending conference.

B.   CIPA § 2 Conference Particulars

At the CIPA § 2 conference, the government's representative necessarily would preview issues bearing on the timeliness and format of its presentation of CIPA § 4 materials. If a large

8

volume of materials are anticipated to be submitted with a CIPA § 4 motion, for example, the government may preview, and the court scrutinize, the rigors of its evidentiary analysis, and any sampling methodology bearing on voluminous materials sought to be deleted from discovery.

Generally speaking, CIPA processes are tedious, time consuming (particularly in a case where extensive surveillance is undertaken), and require significant dedication of resources by all involved. When classified materials are involved, it is difficult for the government to predict when it will be able to complete various discovery disclosures. If the government seeks to declassify the materials, it may have to consult with various intelligence agencies for approval. This can be a lengthy process. The CIPA § 2 conference requirement promotes an orderly focus on these types of considerations at an early stage.

A CIPA § 2 conference affords occasion to test the government's assumptions about the volume of classified materials, and the possibility of declassification. The court will inquire into when various agency approvals are anticipated and how soon the material may be able to be turned over to the defense. Lengthy time allotments required to copy discovery material necessarily are concerning in any criminal case.

Effective case scheduling depends upon the promotion of realistic deadlines for production of classified discovery. Towards that end, the court will accede here to the government's request that the CIPA § 2 conference not be set sooner than 45 days in order for it to gather necessary information. The tenor of CIPA § 2 also corresponds to that of Rule 17.1 of the Federal Rules of Criminal Procedure, which promotes utility of the court on its own, or on a party's motion, holding one or more pretrial conferences in furtherance of a fair and expeditious trial. Regular evaluations of the case schedule due to discovery issues often become necessary in these types of cases.

9

As earlier commented upon, a defendant is disadvantaged by exclusion from the court's consideration of issues arising involving the government's obligations in discovery. The court will endeavor to conduct as much of the conference in defendants' presence as possible. To the extent defense counsel have their necessary clearances by time of the CIPA § 2 conference, need for their exclusion may be mitigated, at least to some extent.

Procedures for informing defense counsel that the government is making a motion pursuant to CIPA § 4 to delete materials from discovery will be considered. Should such request be made, the court may invite counsel to brief the legal standard that the court should employ in determining whether to allow the government's request. Defense counsel may also be invited to submit for the court's *in camera* consideration a summary of anticipated defenses so that the court can more accurately evaluate whether the materials proposed to be deleted are in fact "relevant and helpful" to the defense.

The court will consider whether prior to accepting any *ex parte* filing from the government regarding CIPA issues, it will require the government to file a brief justifying the need for the filing to be made *ex parte*, and mandate that this brief, either in whole or in redacted format, also be served on defendants, allowing defendants to challenge the need for *ex parte* proceedings. See Libby, 429 F.Supp.2d 46 (extensive discussion undertaken concerning the justification required to be made by the government that an *ex parte* filing is necessary). The parties are encouraged to assess these type of issues in advance of conference, and any others which bear on the just, speedy progress of the case, also taking into consideration the public's interest in a speedy trial, and access to the public records, and raise them up for dialogue.

Mechanics of filing and redaction processes also will be discussed, and the Court

Information Security Officer ("CISO") assigned to the case will be available to respond to questions. Following entry of any classified, *ex parte* order allowing the government to delete certain materials from discovery, the court will discuss that it enters a public notice that materials have been deleted pursuant to CIPA § 4. Necessity for and format of notices to be lodged on the public docket alerting to classified filings made by any party also will be addressed.

Many classified motions and orders can be placed on the public docket once they are appropriately redacted by the government. There is utility, too, in requiring redaction of classified filings rendered *ex parte*. An orderly redaction process will be imposed in the case so that redacted filings are publicly docketed timely. This aspect of conference discussion also will be aided by the participation of the CISO.

## CONCLUSION

In accordance with the foregoing, the court allows the motion, and sets the CIPA § 2 conference for **May 29, 2014, at New Bern, to commence at 9:30 a.m.**

Moreover, the court notices its intent to hold *ex parte*, *in camera* hearings following that conference with both sides, assuming a defendant requests such conference.

Not later than May 22, 2014, the government shall file an *ex parte* report with the court regarding the status of its declassification process, which report may be classified to promote a level of detail and precision in commentary, and permit it to highlight issues intended for discussion *ex parte* May 29, 2014. The government shall preview issues bearing on the case schedule including timeliness and format of its anticipated presentation of CIPA § 4 materials.

If any party wishes to file a pre-conference memorandum, they are invited so to do, in furtherance of a more speedy and efficient CIPA § 2 conference.

The current case schedules in effect are set aside, where a realistic, coordinated case schedule taking into consideration the nature of the information at issue and pending CIPA processes, will be entered immediately after conference.

SO ORDERED, this the 18th day of April, 2014.

_____
LOUISE W. FLANAGAN
United States District Judge